COURT OF APPEALS OF VIRGINIA

Present:  Judges Beales, Causey and Senior Judge Haley
Argued at Richmond, Virginia

UNPUBLISHED

VICTOR JERMAINE RUSSELL JACKSON

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0906-22-2                      JUDGE RANDOLPH A. BEALES
                                                    SEPTEMBER 26, 2023

COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF NEW KENT COUNTY
                                B. Elliott Bondurant, Judge

            Charles E. Haden for appellant.

            Justin B. Hill, Assistant Attorney General (Jason S. Miyares,
            Attorney General, on brief), for appellee.


        Following a jury trial, Victor Jackson was convicted of two counts of misdemeanor

assault and battery of a family member and was sentenced to twenty-four months of

incarceration with twenty-one months suspended.  Jackson represented himself *pro se* at trial

because the circuit court concluded that Jackson had *de facto* waived his Sixth Amendment right

to counsel.  On appeal, he contends that the circuit court "erred in denying Jackson's motion to

appoint counsel to represent him at his jury trial."

                                    I. BACKGROUND

        "In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, [as] the prevailing party at trial."  *Scott v.

Commonwealth*, 292 Va. 380, 381 (2016).  On September 15, 2021, the New Kent County

Juvenile and Domestic Relations District Court ("JDR court") convicted Jackson of two counts

---

        [*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

of misdemeanor assault and battery of a family member.[1]  Jackson appealed both of those convictions for a trial *de novo* in the Circuit Court of New Kent County.  He first appeared in the circuit court on November 15, 2021, for the "setting of [a] trial date" and "requested the opportunity to retain counsel."  The circuit court granted Jackson more than one continuance for the purpose of allowing him to hire an attorney.  Jackson explained to the circuit court, "I'm doing everything I can to come up with the money," but he stated that he had not been able to acquire the money necessary to pay the required retainer. [2]

At a status hearing on January 10, 2022, Jackson explained, "I don't have an attorney as of yet.  I haven't been able to come up with $5,000."  The circuit court then asked Jackson if he wanted to be considered for court-appointed counsel.  Jackson responded that he would.  In response to the judge's questions about whether he qualified for court-appointed counsel, he testified that he was self-employed as a remodeler, that he was paid by the job, and that he worked "pretty much a job every week."  The circuit court then asked Jackson for his average monthly income.  Jackson responded that he had just completed $1,500 worth of work that week, and he estimated that he would have about $6,000 in gross income for the month.  When the circuit court asked Jackson for his net income, Jackson stated:

> I couldn't tell you [what my net income is] without computing all my receipts that I save, you know, for fuel and food and such.  I couldn't give you an accurate number.

When asked about his liquid assets, Jackson informed the circuit court that he did not own a car or own any real estate but that he did own two old Boston Whaler boats which he

---

[1] The JDR court had found Jackson to be indigent.  Jackson waived his right to counsel in the JDR court as his relationship with his court-appointed attorney at the JDR trial was "not tenable," according to the JDR judge.

[2] Jackson told the circuit court that an attorney had represented him in a previous matter and that he had just finished paying $5,000 for that case.  He also represented that the attorney required him to pay an additional $5,000 to secure representation in this case.

estimated might be worth "$16,000 maybe amongst the both of them." He also informed the circuit court that he had tools that he could sell for around $7,500 to $10,000. Jackson explained, however, that he only had $70 in cash on hand and that he had no money in his bank account. The circuit court concluded that Jackson did not qualify for court-appointed counsel at that time. The trial judge then told Jackson, "I'm going to continue this matter one more time to the 31st of January and I'm going to note on here if you don't have counsel at that point in time, then it's going to be constituted as a waiver."

At the status hearing on January 31, 2022, Jackson informed the circuit court that he had been able to "g[e]t some money saved toward an attorney" and that he was working diligently to come up with the rest of the money that he needed to pay the necessary retainer. Jackson explained that he had spoken to three attorneys (including a law firm in Hampton that required a $7,500 retainer) and that he did not yet have enough money to pay the retainer. However, he thought that if the circuit court could continue the case for about a month to a month and a half, he could have an attorney retained by then. However, the trial judge decided to "set the matter for trial." Jackson asked if the court would force him to go to trial without an attorney if he appeared for trial without one. The trial judge responded, "Yes, sir."

The case was then set for trial on February 28, 2022. However, the circuit court granted additional continuances related to the Commonwealth's request for a continuance due to an unavailable witness and related to Jackson's decision to exercise his constitutional right to a jury trial. Jackson appeared for trial in the circuit court on June 7, 2022.

Before *voir dire* began on June 7, 2022, Jackson again asserted his constitutional right to be represented by a lawyer at his trial and alleged, "[T]he Court has forced me to come in here today to represent myself." Jackson continued, "I've asked you [for a lawyer] several times in your courtroom, and I understand your annoyance, but I also understand I have not had enough

money to give a lawyer the five thousand dollars that it requires to obtain an attorney to represent me." Jackson continued, "I am homeless sleeping in my truck right now and you're asking me to give five thousand dollars to an attorney that I cannot afford to." He also pointed out that, at the status hearing on January 10, 2022, the circuit court had considered his gross income instead of his net income. He then asked, "Are you willing to qualify me for my actual, not my gross, but what I actually netted? Would you like to do that for me right now because as I said I have zero dollars in my bank account."

During the lengthy exchange between Jackson and the trial judge, the judge asked Jackson whether he was ready to proceed with trial. Jackson responded:

> No, I'm not ready to proceed with trial today. I would like an attorney appointed to me because I have zero dollars in my bank account. I woke up in my truck this morning. I have zero dollars in my future bank account. I have no jobs scheduled this month, and I have no money.

The trial court denied Jackson's request and stated that he had given Jackson ample opportunity to hire an attorney and that "[t]he trial is going forward today." Jackson proceeded *pro se*, and the jury found Jackson guilty on both counts of assault and battery of a family member.

On June 13, 2022—six days after trial—Jackson again asked for court-appointed counsel to handle his appeal to this Court. Jackson informed the circuit court that he had no income, no cash, no real estate, no money in any bank account, and no assets of any value. On June 16, 2022—nine days after trial—the trial judge entered an order then finding Jackson indigent and appointing counsel to represent him on appeal. Jackson timely appealed his convictions to this Court.

## II. ANALYSIS

Jackson's sole assignment of error on appeal is that "[t]he trial court erred in denying Jackson's motion to appoint counsel to represent him at his jury trial where Jackson, who represented to the trial court that he was homeless, had no money in his bank account, and had no other funds with which to retain an attorney, was thereby deprived of his Sixth Amendment right to counsel."

Although "courts are accorded wide discretion in deciding whether to grant continuances to enable a defendant to secure new counsel," *McNair v. Commonwealth*, 37 Va. App. 687, 697 (2002) (*en banc*) (citing *Sampley v. Att'y Gen. of N. Carolina*, 786 F.2d 610, 613 (4th Cir. 1986)), the question of whether a defendant was denied his Sixth Amendment right to counsel is a question of law that we review *de novo*, *Walker v. Commonwealth*, 71 Va. App. 665, 672 (2020) (citing *Huguely v. Commonwealth*, 63 Va. App. 92, 106-07 (2014)). "In this context, although we review the trial court's factual findings only for clear error, whether [the appellant's] actions and statements constituted a waiver is a 'legal determination that we review *de novo*.'" *Blue v. Commonwealth*, 49 Va. App. 704, 710 (2007) (quoting *Commonwealth v. Redmond*, 264 Va. 321, 327 (2002)).

### A. No *De Facto* Waiver of Counsel

A criminal defendant has a fundamental constitutional right to representation by an attorney at trial. U.S. Const. amend VI; *see also Gideon v. Wainwright*, 372 U.S. 335, 343-44 (1963). Thus, "a defendant should be afforded a fair opportunity to secure counsel of his own choice," *Powell v. Alabama*, 287 U.S. 45, 53 (1932), or, if the defendant is indigent, representation must be "made available to him by the court," *Walker*, 71 Va. App. at 672.

A defendant may decide to waive his Sixth Amendment right to counsel. *Faretta v. California*, 422 U.S. 806, 814 (1975). However, "absent a knowing and intelligent waiver, no

person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." *Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972). "To be valid, any such waiver must be the voluntary act of the defendant and must constitute a knowing and intelligent abandonment of a known constitutional right or privilege." *McNair*, 37 Va. App. at 695 (citing *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)). "[T]he burden is on the Commonwealth to prove 'by clear, precise and unequivocal evidence' that the defendant did actually waive his right to counsel." *Bolden v. Commonwealth*, 11 Va. App. 187, 191 (1990) (quoting *Lemke v. Commonwealth*, 218 Va. 870, 873 (1978)).

"The waiver of the right to counsel need not be express; it may be inferred from a defendant's conduct." *Walker*, 71 Va. App. at 673; *see, e.g.*, *McNair*, 37 Va. App. at 696 ("[I]t is clear that certain dilatory conduct on the part of a defendant may also be properly viewed as an effective *de facto* waiver of Sixth Amendment protections."). In *Blue v. Commonwealth*, this Court stated, "To establish a *de facto* waiver . . . Virginia law requires that we view the defendant's conduct in its entirety, together with all the other circumstances of the case, that support the conclusion his or her conduct tended to unreasonably and unjustifiably delay trial." 49 Va. App. at 711-12 (quoting *Bailey v. Commonwealth*, 38 Va. App. 794, 803 (2002)). "While we view the evidence in this case in the light most favorable to the Commonwealth, we must also 'indulge every reasonable presumption against waiver of counsel.'" *Id.* at 711 (quoting *McNair*, 37 Va. App. at 698).

Jackson's conduct, viewed in its entirety together with all the other circumstances of this case, does not support the conclusion that Jackson *de facto* waived his right to counsel on June 7, 2022, the day of his criminal trial. *See id.* at 711-12. This Court's decision in *Blue* is instructive in the case now before us on appeal. In that case, after several continuances, Blue appeared at a status review hearing without retained counsel and, by his own admission, did not qualify for

court-appointed counsel at that time. *Id*. at 708. The trial judge then informed Blue that if he appeared without counsel at trial, then the court would consider such an appearance as a waiver of his right to counsel at trial. *Id.* Later, Blue "informed the trial judge that his circumstances had changed and he was unable to afford counsel and requested court-appointed counsel." *Id.* at 709. The circuit court in that case did not appoint Blue counsel because it determined that he did not qualify, and the court then found that Blue had *de facto* waived his right to representation. *Id.* On appeal, this Court reversed the circuit court's finding of *de facto* waiver and held that "the trial court erred in denying Blue's request for court-appointed counsel." *Id.* at 716. It reasoned that "Blue's actions did not constitute a *de facto* waiver of his right to counsel" in part because "Blue never indicated to the court that he wanted to waive counsel and in fact continued to attempt to get representation"—but "was unable to do so due to the lack of funds." *Id.* at 712, 714.

Likewise, in the case now before us on appeal, Jackson maintained throughout the proceedings in the circuit court that he did not want to proceed *pro se*. *See id.* at 714. In fact, when the circuit court asked Jackson on June 7, 2022, whether he was "ready to proceed with trial," Jackson responded, "No, I'm not ready to proceed with trial today. I would like an attorney appointed to me." *See McNair*, 37 Va. App. at 695 (noting that a similar exchange in that case amounted to "clear assertions that [appellant] wanted an attorney to represent him" and that he was, therefore, "constitutionally entitled to the assistance of an attorney at his trial"). The record also shows that, like the appellant in *Blue*, Jackson had attempted to get representation but that he was unable to do so due to the lack of funds. *See Blue*, 49 Va. App. at 714. Furthermore, Jackson had also informed the circuit court that he was attempting to acquire the necessary funds to hire an attorney.

- 7 -

Also similar to the appellant in *Blue*, Jackson informed the circuit court of a detrimental change in his financial circumstances that had occurred in the intervening months between the January 2022 hearing and the June 2022 trial. *See id.* at 709. Specifically, in January 2022, Jackson had represented to the circuit court that he was self-employed, that he had just made $1,500 the previous week, and that he would make approximately $6,000 in gross income for the month given that he had "pretty much a job every week." In contrast, on June 7, 2022, Jackson explained to the circuit court that he was now homeless, jobless, and penniless. He also indicated that he had no expectation of any income in the near future when he stated that he had "no jobs scheduled this month" and that he had "zero dollars in [his] future bank account." However, the trial judge continued to deny Jackson's request for court-appointed counsel without considering these changes in Jackson's financial circumstances that certainly could have affected whether he was deemed to be indigent under Code § 19.2-159 and, thus, constitutionally entitled to a court-appointed attorney to represent him at trial.

In addition, Jackson also brought to the circuit court's attention an issue with the manner in which the circuit court had previously determined that Jackson did not financially qualify for court-appointed counsel. Specifically, Jackson asked the trial judge whether he would be willing to consider whether Jackson qualified for court-appointed counsel based on the amount of income that Jackson "actually netted" rather than on his gross income, as the circuit court had done in January 2022. Pursuant to Code § 19.2-159(B)(1), the court is to consider "[t]he *net income* of the accused" when determining whether a defendant is indigent. (Emphasis added). However, the circuit court denied Jackson's request on June 7, 2022 to properly consider his financial eligibility for court-appointed counsel based on his *net* income and continued to refuse to appoint counsel to represent him at trial.

- 8 -

However, only *nine days* after Jackson had been required to represent himself *pro se* at his jury trial, the same circuit court judge found that Jackson was indigent for purposes of his appeal. The financial eligibility form that Jackson filed in June 2022 confirmed that Jackson had no income, no money, and no assets of any value.[3] Thus, the same trial judge who had just determined that Jackson was essentially not indigent and thus not entitled to have court-appointed counsel only *nine days* earlier for his *jury trial* found that he was now indigent only a few days after his trial and appointed counsel to represent him on appeal. Some of Jackson's conduct clearly tested the circuit court's patience. However, given the totality of the circumstances regarding Jackson's financially destitute situation, about which he had informed the circuit court on June 7, 2022 (including evidence that Jackson was so indigent that he had awakened in his truck the very morning of his jury trial because he was homeless), Jackson did not waive his right to counsel.

B. The Circuit Court's Failure to Provide Adequate Procedural Safeguards

In an *en banc* decision of this Court in *McNair v. Commonwealth*, we held "that in order to establish a . . . *de facto* waiver of counsel by conduct, the record should demonstrate adequate procedural safeguards. Specifically, the record should reflect adherence to the statutory guidelines set forth in Code § 19.2-157 *et seq*., governing the right to counsel." 37 Va. App. at 697. In *Van Sant v. Commonwealth*, 224 Va. 269, 273-75 (1982), the Supreme Court held that trial courts err when they fail to comply with the procedural requirements of those statutes,

_____

[3] At oral argument before this Court, the Commonwealth suggested that Jackson's representations on the June 2022 financial eligibility form were unreliable. However, the circuit court found Jackson to be indigent based on this information—and thereby eligible for court-appointed counsel for his appeal to this Court. Therefore, we simply cannot make our own determination on appeal as to the credibility of Jackson's statements on that form—and are bound on appeal by the circuit court's credibility findings as to those representations. *See Secret v. Commonwealth*, 296 Va. 204, 225-26 (2018); *Cornell v. Commonwealth*, 76 Va. App. 17, 31 (2022).

which includes providing a waiver form to the defendant when a defendant desires to waive his right to counsel and providing a sworn statement of indigence if the defendant is indigent and wants court-appointed counsel. Furthermore, in *Blue*, this Court stated that the trial court should also admonish the defendant about "the dangers and disadvantages of self-representation so that the *record* will establish that '[the defendant] knows what he is doing and his choice is made with eyes open.'" 49 Va. App. at 712 (quoting *Church v. Commonwealth*, 230 Va. 208, 215 (1985)); *see also McNair*, 37 Va. App. at 698. Although failure to provide these procedural safeguards does not require reversal *per se*, such failure makes it more difficult for the Commonwealth to meet its burden of establishing that the defendant *de facto* waived his right to counsel. *Van Sant*, 224 Va. at 274; *McNair*, 37 Va. App. at 697-98; *Blue*, 49 Va. App. at 712.

The record now before us on appeal does not reflect that the circuit court adhered to the statutory guidelines set forth in Code § 19.2-157 *et seq. See McNair*, 37 Va. App. at 697. Specifically, when a defendant "desires to waive his right to counsel, and the court ascertains that such waiver is voluntary and intelligently made, then *the court shall provide the accused with a statement to be executed by the accused to document his waiver*." Code § 19.2-160 (emphasis added). "In the absence of a waiver of counsel by the accused, and if he shall claim that he is indigent, the court shall proceed in the same manner as is provided in [Code] § 19.2-159." *Id.* If the defendant then refuses or otherwise fails to sign either the waiver form under Code § 19.2-160 and (if the defendant is indigent) the statements required under Code § 19.2-159, "the court shall note such refusal on the record" and "[s]uch refusal shall be deemed to be a waiver of the right to counsel." *Id.* Here, the Commonwealth conceded at oral argument before this Court that "there is no indication in the record that he [Jackson] was offered a form" as statutorily required. Furthermore, from our review of the record, nothing in the transcripts from the January 10, 2022 hearing (or from any other hearing before the circuit court) shows that

- 10 -

Jackson refused to sign the waiver form or shows that Jackson was even offered any such forms to sign.[4]

In addition, there is no evidence in the record before us on appeal that the circuit court ever made Jackson aware of the dangers and disadvantages of waiving his right to counsel. *See Blue*, 49 Va. App. at 712 (stating that the circuit court should also admonish the defendant about "the dangers and disadvantages of self-representation so that the *record* will establish that 'he knows what he is doing and his choice is made with eyes open'" (quoting *Church*, 230 Va. at 215)). It appears from the record on appeal that the circuit court did not even inform Jackson of the particular dangers and disadvantages of *pro se* representation associated with jury trials. Thus, Jackson did not knowingly and intelligently waive his right to counsel when he appeared without counsel at trial on June 7, 2022.

In summary, the circuit court did not provide the proper procedural safeguards to ensure that any purported waiver of Jackson's constitutional right to legal representation at his June 7, 2022 trial was both intelligently and voluntarily made by Jackson. *See* Code § 19.2-160; *Van Sant*, 224 Va. at 274-75; *McNair*, 37 Va. App. at 697-98; *Blue*, 49 Va. App. at 712. Furthermore, Jackson repeatedly told the circuit court during the proceedings that he did not want to waive his right to counsel. Jackson had been found indigent while the matter was pending before the JDR court. He also had consistently maintained to the circuit court that he wanted counsel and that he was struggling to acquire the necessary funds to hire an attorney. Although the circuit court had found Jackson not to be indigent in January 2022 (and thus not entitled to a court-appointed attorney), Jackson reminded the circuit court on June 7, 2022 that

---

[4] Although Jackson signed a form waiving his right to counsel in JDR court, that waiver was not sufficient also to constitute a waiver of counsel for his trial in the circuit court. Jackson's case was before the circuit court on appeal for a trial *de novo* and "required an independent inquiry by the court as to whether [the defendant] knowingly and intelligently waived his right to counsel." *Harris v. Commonwealth*, 20 Va. App. 194, 198 (1995).

the court had previously considered his financial eligibility for a court-appointed attorney based upon his gross income rather than based on his net income, as required by statute. *See* Code § 19.2-159. In addition, on June 7, 2022, he informed the circuit court of a significant detrimental change in his financial circumstances such that he was now jobless, homeless, and penniless—*i.e.*, he had awakened in his truck on the morning of trial because he was now homeless. Despite Jackson's pleas, the circuit court judge continued to deny Jackson's request for court-appointed counsel to represent him at his jury trial, but—only nine days later—the same judge determined that Jackson was indeed indigent and entitled to court-appointed counsel for his appeal to this Court. In short, Jackson had to go to trial without an attorney even though he had consistently told the circuit court that he wanted to retain an attorney or wanted a court-appointed attorney if he could not afford to pay for one. Jackson's actions simply did not amount to a *de facto* waiver of his right to counsel at his June 7, 2022 jury trial, and, for all of these reasons, the circuit court erred in requiring Jackson to go to trial on June 7, 2022 without an attorney.

### III. CONCLUSION

For all of the foregoing reasons, under the totality of the specific circumstances of this particular case, we hold that the circuit court erred in denying Jackson's request for court-appointed counsel at his trial on June 7, 2022 and in requiring him to go through his trial without an attorney. *See Blue*, 49 Va. App. at 712, 714. Therefore, we reverse Jackson's two convictions for misdemeanor assault and battery of a family member and remand for a new trial if the Commonwealth is so inclined.

*Reversed and remanded.*